**Della SHAW, on Behalf of Stacia Anne ROBERTS, a Minor, Plaintiff-Appellant,**

**v.**

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 84–5654.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1985.

Decided Dec. 6, 1985.

Lew Hollman, Jim Carroll, San Fernando Valley Neighborhood Legal Services, Inc., Pacoima, Cal., for plaintiff-appellant.

Joseph Stein, Asst. Regional Atty. U.S. Dept. of Health & Human Services, San Francisco, Cal., for defendant-appellee.

Before HUG and HALL, Circuit Judges, and JAMESON,[*] District Judge.

JAMESON, Senior District Judge.

Della Shaw, on behalf of claimant, Stacia Anne Roberts, a minor, has appealed a summary judgment dismissing this action for recovery of child insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433, on the ground that claimant was not a dependent child of her deceased stepfather, Charles W. Shaw.[1] We affirm.

## I. *Background*

Charles married Della on October 30, 1973. They had a son, Broya Marcus, and Stacia, who was Della's daughter by a previous marriage. The four lived together as a family for approximately six and a half years. During this time both Della and Charles worked to support their family.

Della, suffering from an illness, left her husband's home and moved to her parents' home in late January, 1980. Stacia remained with her stepfather until February 10, 1980. When Della and her mother arrived to move Stacia to her new home, Charles threatened to kill Della and her mother, smashed windows and experienced bouts of crying. The police arrived twice and spoke with Charles for about an hour to calm him. The administrative law judge observed that during Della and Charles' separation Charles "was going through an acute exacerbation of mental difficulties...."

Charles petitioned for dissolution of marriage on March 16, 1980. Testimony and letters by Charles indicated that he filed for divorce in the hope of forcing Della's return. Although often confused, Charles' letters to Della asked her to return to him. At one point, Charles stated that he was unable to complete the dissolution proceedings and again suggested a reconciliation, assuring Della that he would seek psychological help. Della testified that she wished to return to Charles once he worked out his problems. Nevertheless, Charles never withdrew the divorce petition, and

---

[*] The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

[1.] The application for child insurance benefits was referred to an administrative law judge (ALJ), who, following a hearing, found that claimant was not eligible for the benefits. This decision was approved by the Appeals Council and became the final decision of the Secretary of Health and Human Services. This action followed. Following cross motions for summary judgment, the district court adopted the report of a magistrate recommending the granting of the Secretary's motion for summary judgment.

Della and the children remained in her parents' home.

During the separation, Charles continued to earn somewhere between fifty and a hundred dollars a week as a musician, playing in a band as a drummer. However, he was unable to continue this work after he suffered a broken leg and internal injuries, the result of a car accident suicide attempt in late March, 1980. In addition to his earnings as a musician, Charles received VA benefits in an amount sufficient to support a family of four. He received these benefits through May, 1980.[2] Thus, from the time Della and Charles separated until May, 1980, Charles received a somewhat steady income.

Although promising support, Charles never contributed financially to Stacia's support after the separation in February, 1980. The United States magistrate noted that "[i]t [was] not even claimed that the wage earner made significant 'contributions' between February and August, 1980. [Claimant] clearly was supported in her grandmother's home by her mother, in part from public assistance payments of as much as $473 per month." Charles often promised support in his letters to Stacia—that he would buy them a house, send her birthday gifts—yet he never assisted her monetarily save for a ten dollar Easter gift and some one dollar bills sent to Stacia to "buy a soda." Lacking her stepfather's support Stacia received AFDC.

Charles committed suicide in September, 1980. He was a fully insured individual. After reviewing the record, the ALJ concluded that Stacia was not dependent upon Charles. He reasoned that Stacia was not living with Charles; nor was Charles contributing one-half Stacia's support, as required by 42 U.S.C. § 402(d)(4). In his decision, the ALJ addressed two possible "measuring periods" for the "one-half support" requirement—the period from the separation until Charles' death and the shorter three month period within the

twelve months preceeding Charles' death available if unemployment or illness caused Charles' lack of support. The ALJ recognized that "[a] strong argument [could] be made in this case that the wage-earner stopped support of the claimant because of illness or unemployment. However, the fact remains that it was not the illness or unemployment of the wage-earner that made him cease support of the claimant; it was the separation of the wage earner and Mrs. Shaw."

The Appeals Council reviewed and denied Stacia's claim on January 19, 1982. Appellant then brought this action for review of the Secretary's decision. The district court approved two reports of a United States magistrate recommending that the Secretary's motion for summary judgment be granted. The court noted that "as sympathetic as plaintiff's case may be, the Court in a § 405(g) proceeding does not review *de novo* the issue before the Secretary."

## II. *Standard of Review*

The law is well settled that this court reviews the record as a whole to determine whether substantial evidence supports the ALJ's decision. *Fife v. Heckler*, 767 F.2d 1427, 1429 (9th Cir.1985); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.1985); *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir.1984). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938) ). We also review the record to assure application of proper legal principles. *Fife*, 767 F.2d at 1429; *Jones*, 760 F.2d at 995; *Kail*, 722 F.2d at 1497.

## III. *Statutory Dependency Requirements*

Appellant contends that (1) Stacia was "living with" Shaw at the time of his death "because their physical separation was the

---

**2.** The United States magistrate found that Charles' monthly income approximated $600 and that his expenses, estimated from filings made during the dissolution proceeding, amounted to $535.

temporary result of Mr. Shaw's mental breakdown;" (2) Stacia "was dependent upon her stepfather because she received at least one-half of her support from him at relevant times prescribed by the Act and the Secretary's regulations'" and (3) there is "no substantial evidence" to support a finding that the separation from February to August or September "was based upon a sane or rational intention to sever their long relationship."

To receive child insurance benefits, claimant must be dependent upon the insured at the time of insured's death or if the insured suffered a "period of disability which continued ... until the month of his death, [be dependent] at the beginning of such period of disability or at the time he became entitled to such benefits." 42 U.S.C. § 402(d)(1)(C)(iii). The statute deems a child dependent if at the specified time "the child was living with or receiving at least one-half of his support from such stepfather or stepmother."[3] 42 U.S.C. § 402(d)(4). Thus, whether the claimant was dependent on her stepfather within the meaning of the statute turns on two definitions: (1) "living with" and (2) the time period utilized to measure the requisite one-half support.

### A. "Living With" Requirement

Claimant contends that she lived with Charles because their separation was only temporary. The regulations define "living with," in pertinent part, as follows:

> You are living with the insured if you ordinarily live in the same home with the insured and he or she is exercising, or has the right to exercise, parental control and authority over your activities. You are living with the insured during temporary separations if you and the insured expect to live together in the same place after the separation.

20 C.F.R. § 404.366(c) (1985).

█ Charles' dissolution petition indicated the separation was not temporary, but permanent. Even though Charles suggested he was unable to complete the dissolution proceedings, he never withdrew his divorce petition. Substantial evidence in the record supports the ALJ's conclusion that Stacia's separation from Charles was permanent.

### B. "One-half Support" Requirement

Claimant next contends that Charles provided one-half of her support during the requisite time period. The statutes and the regulations promulgated thereunder provide a variety of time periods utilized to measure support. 42 U.S.C. § 402(d)(1)(C) explicitly states that the claimant must have been dependent upon the deceased insured at the time of his death, or if the insured suffered a disability, at the beginning of the disability period or at the time the insured became entitled to disability benefits. The regulations further delineate the time during which the insured must have provided one-half claimant's support. The insured must have provided one-half claimant's support for a reasonable period of time. 20 C.F.R. § 404.366(b). The regulations offer three possible alternative reasonable periods: (1) the twelve month period immediately preceding the time when the one-half support requirement must have been met; (2) if the insured reduced support because of illness or unemployment, the insured need only have provided one-half claimant's support for three of the twelve months immediately preceding the time the support requirement must have been met; or, (3) if a permanent change in support occurred, the insured need only have provided one-half claimant's support from the time of the change until the one-half support requirement must have been met. *Id.*

█ Claimant first argues that Charles suffered from a disability, and that the requisite reasonable support period should be measured from February, 1980, the time

---

**3.** Stacia is a child as defined by 42 U.S.C. § 416(e). Child includes a stepchild who has been such stepchild for not less than nine months immediately preceding the day on which such individual died.

Charles began suffering from the disability. The law defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."[4] 42 U.S.C. § 416(i); 20 C.F.R. § 404.1505(a) (1985). 42 U.S.C. § 402(d)(1) begins by limiting child's insurance benefits to those children "of an individual *entitled to ... disability insurance benefits*, or of an individual who die[d] a fully or currently insured individual." (Emphasis added). It is apparent that before the period of disability triggers the time from which support is measured, the agency must first have determined the insured was entitled to disability benefits. The agency never made a disability determination with respect to Charles. Thus, there exists no period of disability from which the support requirement can be measured.

■ The reasonable period of support must be measured from the time of Charles' death. Claimant contends that the applicable measuring period to determine whether Charles provided one-half Stacia's support is any three months of the twelve month period prior to Charles' death. The regulations provide for such a measuring period if the insured

> was forced to stop or reduce contributions because of circumstances beyond his or her control, such as illness or unemployment, and no one else took over the responsibility for providing at least one-half [claimant's] support on a permanent basis. Any support [claimant] received from a public assistance program is not considered as a taking over of responsibility for [claimant's] support by someone else.

20 C.F.R. § 404.366(b)(2) (1985). The ALJ recognized that claimant had made a strong argument in support of this measur-

ing period. Nevertheless, the ALJ found that neither Charles' illness nor his subsequent unemployment caused Charles to terminate Stacia's support, but rather Charles' separation from Della caused the termination of support. Despite Charles' illness and unemployment, he still received VA benefits through the month of May in an amount to support a family of four. Yet during this time he never made any regular contribution, however minimal, to Stacia's support. No evidence in the record suggests that Charles lacked the means to make some contribution to Stacia's support. Substantial evidence existed to support the ALJ's finding that Charles did not cease support because of illness or unemployment.

The ALJ, finding a permanent change in support, disregarded the usual twelve month measuring period, and properly used the shorter period provided by the regulations. The regulations specify that if

> [a]t some point within the 12–month period, the insured either begins or stops providing at least one-half of [claimant's] support on a permanent basis and this is a change in the way [claimant] had been supported up to then[,] ... the time from the change up to the end of the 12–month period will be considered a reasonable period....

20 C.F.R. § 404.366(b)(1) (1985). In support of his decision, the ALJ cited SSR 71–11c, which adopted *Walker v. Finch*, No. C–69–74 (W.D.Tenn. April 8, 1970). In SSR 71–11c the claimant received no support from his stepfather after the stepfather separated from claimant's mother. In light of the permanent change in support circumstances, the ruling applied the measuring period from the moment of the change in circumstances until the insured's death, and denied claimant any benefits. Similarly, Stacia did not receive support from Charles after the moment of separa-

---

**4.** 42 U.S.C. § 416(i) defines disability and provides that the definition applies to all sections except 42 U.S.C. § 402(d) and a few other sections. Reasonably interpreted, § 416(i) excepts its application to § 402(d) with respect to the child's possible disability. 42 U.S.C. § 402(d)(1)(B) defines the child's disability pursuant to 42 U.S.C § 423(d). Thus, with respect to Charles' alleged disability, § 416(i) is applicable.

**680**

tion. As was noted earlier, instead she lived in her grandparents' home, supported by her mother, in part by AFDC benefits. This resulted in a permanent change of support requiring application of the measuring period from the time of the separation until Charles' death. Substantial evidence in the record supports the ALJ's finding that Charles failed to provide one-half Stacia's support during this measuring period.

### IV. *Conclusion*

We conclude that there was substantial evidence to support the findings of the administrative law judge that (1) claimant was not living with her stepfather at the time of his death; (2) her stepfather was not contributing one-half or more of claimant's support for a reasonable time or at the time of his death; (3) this lack of support was not caused by his illness or unemployment, but by his separation from claimant's mother; and (4) claimant was not eligible for child insurance benefits on the earnings account of her stepfather.

AFFIRMED.