Jessica A. **WEATHERBY;  Jocelyn A. Weatherby, Minors By and Through their Guardian ad litem, Cherie L. Tatarka, Plaintiffs–Appellants,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.**

No. 90–35477.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 11, 1991.

Decided Aug. 19, 1991.

---

**640**

Robert W. Boyer, Grants Pass, Or., for plaintiffs-appellants.

Richard H. Wetmore, Asst. Regional Counsel, Dept. of Health and Human Services, Seattle, Wash., for defendant-appellee.

Before ALARCON, FERGUSON and HALL, Circuit Judges.

ALARCON, Circuit Judge:

Cherie L. Tatarka, natural mother and guardian ad litem of claimants, Jocelyn and Jessica Weatherby, seeks review of the district court's order affirming the Secretary of Health and Human Services' (Secretary) decision to deny surviving child's social security insurance benefits to her dependent children, following the death of their stepfather.

We must decide two questions in this case:

First. Are dependent children entitled to benefits pursuant to 42 U.S.C. § 402(d)(1)(C)(ii) (1990) if, at the time of their stepfather's death

(1) they are temporarily living with their mother in a separate residence as a result of a marital dispute;

(2) their stepfather did not provide at least one half of their support during the marital separation; and

(3) their stepfather did not exercise parental control and authority during the marital separation.

Second. Does the undisputed evidence in the record show that the marital separation was temporary?

We reverse because we conclude that (1) a temporary marital separation comes within the exception set forth in 20 C.F.R. § 404.366(c) (1990) to the "living with" a stepparent requirement of 42 U.S.C. § 402(d)(4) (1990), and (2) Mrs. Tatarka met her burden of proof.

I

PERTINENT FACTS AND
PROCEDURAL
POSTURE

The facts are not in dispute. Mrs. Tatarka married Mr. Tatarka on September 27,

1985. Mrs. Tatarka, Jocelyn and Jessica, her children by a previous marriage, and Mr. Tatarka lived together in the family residence in Grants Pass, Oregon, for approximately 11 months.

On August 3, 1986, Mrs. Tatarka asked her husband for money to get her dog clipped. An argument ensued over his claim that she spent too much money. Mrs. Tatarka took the children and sought temporary shelter in her mother's home in the same city. She took no extra clothing with her. Mrs. Tatarka testified that she "didn't plan on leaving [her] home at that time." That evening, Mrs. Tatarka returned to her home to pack "some clothes for overnight and some pajamas." She told Mr. Tatarka that she was going to her mother's residence because she "needed to think about what was happening." Mrs. Tatarka told her husband she "would be in touch with him."

Mrs. Tatarka left her personal belongings and "bathroom things," including her rollers. Mrs. Tatarka testified: "Everything I owned I left. It was my home."

Mrs. Tatarka and the children resided at her mother's home until Mr. Tatarka's death on December 12, 1986. In the four months between the separation and his death, Mrs. Tatarka had frequent contact with her husband. She testified that they "talked to each other a lot on the phone." They went out to dinner several times. They watched television or had a bottle of wine together in their home. Occasionally, she spent the night.

Beginning in October 1986, Mr. and Mrs. Tatarka attended marriage counseling sessions with a professional counselor at Mr. Tatarka's suggestion. He told Mrs. Tatarka that "he wanted to keep the marriage together."

Mrs. Tatarka testified that she agreed to seek counseling because she wanted to keep the marriage alive. Just prior to her husband's death, she told him:

I was regaining, I needed, I could not go back into the marriage as I was right then, because I was trying to get a little self-confidence back. And before I could help our marriage I had to help myself.

And I told him that as soon as I felt stronger and I felt more sure about myself, then I was ready to tackle our marriage.

Mrs. Tatarka did not "have a desire to file for a divorce" before her husband's death. Mr. Tatarka did not indicate that he intended to file for a divorce. Instead, he "[a]lways" told Mrs. Tatarka he wanted to reconcile.

During their separation, Mr. Tatarka paid for the counseling sessions by check and gave Mrs. Tatarka cash to pay for groceries, gasoline, school clothes, Jocelyn's piano lessons, Jessica's braces, and winter coats for the children. Mrs. Tatarka did not pay rent to her mother.

On January 9, 1987, following Mr. Tatarka's death on December 12, 1986, Mrs. Tatarka filed an application for child insurance benefits for her daughters, as dependent stepchildren of an insured individual. The application was denied on April 14, 1987, by the Social Security Administration (SSA) on the ground that Mrs. Tatarka had failed to show that her children had been receiving support for the 12–month period ending on the date Mr. Tatarka died. Mrs. Tatarka filed a request for reconsideration. She argued that Mr. Tatarka contributed more than one-half of each child's support. The SSA denied the request for reconsideration. The SSA explained that the request was denied because Mr. Tatarka's cash contributions were less than one-half of the support received for the children after the separation.

Mrs. Tatarka next sought a hearing before an administrative law judge (ALJ). An ALJ conducted a hearing on September 13, 1988. Mrs. Tatarka testified and submitted documentary evidence. Mrs. Tatarka's attorney argued that her children were entitled to receive child's insurance benefits because Mr. and Mrs. Tatarka were only temporarily separated at the time of his death. The ALJ denied the application because the record showed that Mr. Tatarka had not provided over one-half of the support of the children. The ALJ also stated that:

the issue in the instant case is not the intent of the parties (to a marriage) to resume living together, or the specific nature of the separation itself, but rather is confined to the issue of the amount of support provided by the deceased wage earner during a separation of the parties.

The Appeals Council reviewed the decision of the ALJ at Mrs. Tatarka's request. The Appeals Council concluded that the evidence was insufficient to show that the children were living with Mr. Tatarka at the time of his death or that they received one-half of their support from him during the separation. The Appeals Council construed 20 C.F.R. § 404.366(c) as requiring that the insured exercise parental control during a temporary separation. The decision of the Appeals Council became the final decision of the Secretary. Mrs. Tatarka filed this action in the district court for a review of the Secretary's decision.

The district court affirmed the Secretary's decision. The district court ruled that "children can be assumed to be living with the insured if the insured has the right to exercise parental control and authority over the children's activities and that a separation is temporary and the insured and claimant expect to live together in the same place after the separation." The district court found that "substantial evidence exists for the finding that the claimant did not expect to live with the insured." The district court also concluded that the evidence was insufficient to demonstrate that Mr. Tatarka supported the children during the four months preceding his death.

## II

### STANDARD OF REVIEW

■ We review the Secretary's decision to deny benefits to determine whether it is supported by substantial evidence. *Shaw ex rel. Roberts v. Heckler*, 781 F.2d 675, 677 (9th Cir.1985). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* We review the district court's legal conclusions de novo. *Adams v. Bowen*, 872 F.2d 926, 927 (9th Cir.1989).

## III

### STATUTORY REQUIREMENTS FOR CHILD'S INSURANCE BENEFITS

Mrs. Tatarka argues that the evidence was sufficient to demonstrate that Jocelyn and Jessica were dependent children "living with" their insured stepfather at the time of his death.

■ Title 42 U.S.C. § 402(d)(1)(C) provides that every child who is a dependent of an insured individual is entitled to monthly insurance benefits upon the death of such parent. Section 402(d)(4) provides that "[a] child shall be deemed dependent upon his stepfather or stepmother" if at the time of the death of the insured individual, "the child was *living with* or was receiving at least one-half of [her] support from such stepfather or stepmother." 42 U.S.C. § 402(d)(4) (1988) (emphasis added). Thus, proof that the child was "living with" an insured stepparent at the time of his or her death is sufficient to establish entitlement to child's insurance benefits. If the child was "living with" a stepparent, it is unnecessary to show that the child was receiving at least one-half of his or her support to be entitled to insurance benefits.

## IV

### TEMPORARY SEPARATION

Regulations enacted by the Social Security Administration have defined the term "living with" as used in section 402(d)(4). You are living with the insured if you ordinarily live in the same home with the insured and he or she is exercising, or has the right to exercise, parental control and authority over your activities. *You are living with the insured during temporary separations if you and the insured expect to live together in the same place after the separation.* Temporary separations may include the insured's absence because of active military service or imprisonment if he or she

still exercises parental control and authority.

20 C.F.R. § 404.366(c) (1990) (emphasis added).

■ The undisputed evidence shows that Jocelyn and Jessica lived in the same house with their stepfather for 11 months until Mr. and Mrs. Tatarka separated. If this separation was temporary, the children are deemed to have been "living with" their stepfather at the time of his death. Accordingly, we must determine whether substantial evidence in the record supports the Secretary's conclusion that the Tatarkas' separation was not temporary. The record does not support the Secretary's finding.

The uncontradicted evidence recited above shows that Mr. and Mrs. Tatarka did not intend to make their separation permanent. No action for dissolution was filed by either of them. They each attended marriage counseling sessions with the object of reconciling. Mrs. Tatarka left "everything [she] owned" in the family home. Mr. Tatarka asked his wife to return to the family residence. Mrs. Tatarka was ready to tackle her marriage as soon as she felt stronger. Unfortunately, Mr. Tatarka died before she had recovered her emotional strength. This evidence satisfies the requirement of section 404.366(c) that the Tatarkas expected to live together in their home after the separation.

The Secretary appears to argue that section 404.366(c) does not apply to separations caused by "marital difficulties." Appellee's Brief at 9. The Secretary asserts: "In *Shaw*, 781 F.2d at 678, the court found that Shaw did not meet the 'living with' requirement, where, as in this case, the separation was due to marital difficulties between the mother and the wage earner, and both parties had indicated a hope to reconcile." *Id.*

The Secretary's reliance on *Shaw ex rel. v. Heckler*, 781 F.2d 675 (9th Cir.1985) is misplaced. We did not suggest in *Shaw* that section 404.366(c) does not apply to *marital* separations. To the contrary, we concluded in *Shaw* that substantial evidence supported the Secretary's finding that the marital separation "was not tem-porary, but permanent." *Id.* at 678. We held in *Shaw* that the fact that the husband filed a petition for dissolution which he never withdrew was sufficient to show that the separation was not temporary. *Id.* In the instant matter, neither party filed for a dissolution of the marriage. No action was taken by Mr. or Mrs. Tatarka that would support an inference that the separation was permanent.

The second sentence of section 404.366(c) refers to "temporary separations" between married persons who intend to live together again. The regulation does not exclude separations that result from "marital difficulties." The words used by the SSA contain no limitation on its application on the *cause* of the separation. Every type of marital separation is covered in the second sentence of section 404.366(c). The only restriction is that the parties expect to live together again.

The third sentence of section 404.366(c) contains a special limitation for marital separations caused by military service or imprisonment. If the separation is due to military service or imprisonment, in addition to proving that it is temporary, the evidence must show that the insured continue to exercise parental control and authority during the separation. Proof of the exercise of parental control and authority is not required if the temporary separation is caused by marital disagreement.

## CONCLUSION

The judgment of the district court is reversed and remanded. The district court is instructed to enter an order reversing the Secretary's decision and directing him to award child's insurance benefits to the claimants.

REVERSED and REMANDED with instructions.