**Ellen L. JONES, Plaintiff/Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant/Appellee.**

No. 84–1864.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 1985.

Decided May 15, 1985.

Harvey P. Sackett, San Jose, Cal., for plaintiff, appellant.

Dennis J. Mulshine, San Francisco, Cal., for defendant, appellee.

Before PREGERSON and FERGUSON, Circuit Judges, and STEPHENS, District Judge *.

STEPHENS, District Judge:

Ellen L. Jones appealed the district court's grant of summary judgment for the Secretary of Health and Human Services (Secretary) on Jones' claim for Supplemental Security Income (SSI) benefits.

Jones applied for SSI benefits in 1981, alleging disability based on diabetes and epilepsy. Following a hearing, the administrative law judge (ALJ) found her not disabled. The Appeals Council denied Jones' request for review.

We reverse and remand because the ALJ's decision is not supported by substantial evidence and the evidence in the record as a whole establishes that Jones is disabled.

First, the ALJ failed to give specific, legitimate reasons for disregarding the opinion of Jones' treating physician that Jones is disabled. See *Murray v. Heckler*, 722 F.2d 499 (9th Cir.1983). The vocational expert's testimony on which the ALJ relied was not founded on medical evidence of Jones' limited functional capacities. See *Maounis v. Heckler*, 738 F.2d 1032 (9th Cir.1984). Further, the ALJ improperly applied the "medical-vocational guidelines" (the grids) because Jones had several nonexertional impairments which significantly compromised her ability to engage in sedentary work. See *Allen v. Secretary of Health and Human Services*, 726 F.2d 1470, 1472–73 (9th Cir.1984); *Kail v. Heckler*, 722 F.2d 1496 (9th Cir.1984).

I

Legal Standards

To qualify for SSI benefits a claimant must establish that a medically determin-

able physical or mental impairment prevents her from engaging in substantial gainful activity and that the impairment is expected to result in death or to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must result from abnormalities which are demonstrable by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 1382c(a)(3)(C).

Once a claimant demonstrates inability to return to past work because of medical disability, the burden shifts to the Secretary to show the claimant can perform other substantial gainful work, considering her age, education and work experience. See *Perry v. Heckler*, 722 F.2d 461, 464 (9th Cir.1983); *Bonilla v. Secretary of HEW*, 671 F.2d 1245, 1246 (9th Cir.1982); *Thomas v. Schweiker*, 666 F.2d 999, 1002 n. 3 (5th Cir.1982); 42 U.S.C. § 1382c(a)(3)(B).

We review the Secretary's decision to determine whether it is supported by substantial evidence in the record as a whole and is based on proper legal standards. See *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir.1984); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir.1981); 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Vidal v. Harris*, 637 F.2d at 712. The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence. See *Vidal v. Harris*, 637 F.2d at 712; *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

II

Substantial Evidence

Jones was 34 years old at the time of the hearing and had an eleventh grade educa-

* Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation.

tion. She testified that she had previously worked for brief periods in computer assembly and inspection, and as a waitress for a few weeks in 1968. She was unable to work on a more regular basis because her diabetes went out of control, requiring hospitalization. She left her last job because of an epileptic seizure. She has suffered from diabetes for many years, and takes insulin injections daily; she also goes to the hospital five to six times a week for treatment. She shares an apartment with a friend but is unable to share in the housework because of pain in her hands and legs. She was scheduled to have surgery but it was delayed because of her diabetes.

Jones' diabetes has caused substantial physical problems which significantly affect her ability to function. Her legs hurt and prevent her from walking far, and swell when she sits for more than half an hour, requiring her to elevate them for up to two hours to reduce the swelling. Her vision is blurry, and her eyes burn and itch; her new glasses only sometimes help. She also has frequent kidney infections and suffers from weakness, shortness of breath and sleeplessness. Pain and swelling in her wrists and hands prevent her from lifting and have not been helped by medication. She suffers from depression because of her health problems and her inability to work. Her driver's license has been revoked because of her epilepsy.

The medical records confirm Jones' history of diabetes and associated medical problems. A 1981 report and X-ray by her treating physician, Dr. Weathers, indicated stomach pain consistent with diabetes, severe diabetes, retinpathy (disease involving hemorrhaging of the retina leading to blindness), and peripheral neuropathy (sensory and motor disorder of the peripheral nerves). Dr. Weathers opined that Jones was totally disabled and unemployable.

The Secretary's consultant, Dr. Cordes, noted frequent previous hospitalizations for diabetic control, ketoacidosis (acid condition of the blood which may lead to coma), laser therapy for visual problems, numbness below the knees for the previous two years (hypesthesia), epileptic seizures presently controlled by medication, back pain which caused problems with bending and heavy lifting, stomach pain becoming worse in the previous 6 months (diabetic gastropathy), and lack of deep tendon reflexes in upper and lower extremities. While Dr. Cordes referred to her diabetes as "presently well-controlled," he found that Jones had experienced significant degenerative diabetic complications in the previous two years, including diabetic neuropathy manifested by hypesthesia of the lower legs, abdominal bloating and nocturnal diarrhea; he opined that her prognosis was guarded because of the recent rapid progression of the disease and that "her limitations are significant in view of these problems." He found that her stomach pains suggested diabetic gastropathy, which had recently worsened and was exacerbated by eating; he indicated that this condition "again is debilitating and not likely to be easily managed by further medical therapy, the prognosis thus being guarded."

Other medical records indicated continuing problems with control of Jones' diabetes, stomach pain, pain and swelling in her hands which was not helped by medication, and pain in her knees, ankles, and feet due to peripheral neuropathy. A report also indicated that she was unable to make a fist with her left hand. Her hand pain was initially diagnosed as bilateral inflammatory arthritis, but subsequent EMG's showed bilateral carpal tunnel syndrome (CTS). While it was hoped that thyroid treatment might resolve the CTS, a neurological report indicates moderately severe carpal tunnel entrapment of the median nerve due to underlying diabetic polyneuropathy, suggesting that thyroid treatment will not be effective.

A vocational evaluation report in November 1981 indicated that Jones' medical problems have given rise to a number of significant limitations on her ability to function in the workplace. Her manual dexterity skills are below average; she has limited feeling in her fingers; she has difficulty seeing

small objects; she is easily frustrated; and her performance is adversely affected by her anxiety. She has low stamina and average gross motor capacity. She has very low math skills and tremendous difficulty remembering information and following directions. Although very cooperative, she was nervous and anxious to the point of tears and required support and encouragement to complete tasks.

The vocational test results show an intellectual capacity below the fifth percentile; a score of third percentile on the oral directions test; zero percentile on mechanical ability; reading, spelling and arithmetic at the 3.9 grade level; combined hand and finger dexterity at the third percentile with below average potential; and fine hand-eye coordination at the fifth percentile, with very low fine finger dexterity.

The ALJ found that Jones could not do her former work because of her problems with her hands, but that she retained the residual functional capacity to do light and sedentary work.[1] He found her not disabled based on the testimony of a vocational expert and grid Rule 202.18, 20 C.F.R. § 404, Subpart P, Appendix 2. These findings are not supported by substantial evidence.

 The ALJ indicated that he questioned Jones' credibility in view of a perceived variance between the medical record and Jones' own testimony. The ALJ could properly disregard Jones' self-serving statements to the extent they were unsupported by objective findings. *See Coats v. Heckler,* 733 F.2d 1338, 1340 (9th Cir.1984). But an examination of the record reveals ample support for Jones' subjective complaints, as detailed above. It was improper for the ALJ to disregard Jones' testimony. *See Maounis v. Heckler,* 738 F.2d at 1034. The Secretary cannot insulate ultimate conclusions regarding disability from review by turning them into questions of "credibility."

The medical and vocational reports spell out significant diabetic complications and resulting functional restrictions on Jones' ability to work. Dr. Cordes, the Secretary's own consultant, concluded that Jones' diabetes and associated medical problems were debilitating and that they imposed significant limitations. The ALJ failed to recognize the recent deterioration in Jones' condition, as documented by Dr. Cordes, or to acknowledge her constant trips to the hospital for relief from pain. The ALJ also mischaracterized the diagnosis of CTS as "very mild" and assumed that it would resolve with thyroid treatment, without reference to the neurological findings tying the CTS to the underlying diabetic neuropathy. He concluded that Jones has no current vision problems, without reference either to her testimony that she had vision problems the day of the hearing or to the vocational evaluation report noting vision difficulties.

 The ALJ gave no specific, legitimate reason for disregarding the opinion of Jones' treating physician, Dr. Weathers, that she was unemployable and disabled due to her diabetic condition. This was error. *See Murray v. Heckler,* 722 F.2d 499 (9th Cir.1983) (If the ALJ wishes to disregard treating physician's opinion in determining eligibility benefits, he must set forth specific, legitimate reasons for doing so). Altogether, the medical evidence supports Dr. Weathers' opinion which, standing alone, establishes total incapacity. *See Coats v. Heckler,* 733 F.2d at 1340 (Doctor's opinion supported by clinical findings must be considered by ALJ). The ALJ's conclusion that there were no significant limits on Jones' functional capacity is not supported by substantial evidence.

The vocational expert testified that Jones could work as a cashier, hotel desk clerk, or kitchen aide, but further questioning by Jones' attorney revealed that he had relied on incorrect information (*e.g.,* that she had

---

1. Sedentary work requires lifting no more than ten pounds, sitting, and a certain amount of walking and standing. 20 C.F.R. § 416.967(c). Light work requires lifting up to twenty pounds, with frequent lifting and carrying of objects up to ten pounds, and a good deal of walking or standing or sitting with pushing and pulling controls. 20 C.F.R. § 416.967(b).

ninth grade math skills), and that he had failed to take into account her physical and functional impairments as revealed by the vocational evaluation. The expert ultimately admitted that her vocational test results "suggest that she would have a very difficult time competing in virtually any job," including the jobs he had suggested. He also testified that Jones' problems with sitting, walking and lack of stamina would render her unemployable.

■ To qualify as substantial evidence, the testimony of a vocational expert must be reliable in light of the medical evidence. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir.1984); *Sample v. Schweiker*, 694 F.2d 639 (9th Cir.1982). The vocational expert's testimony in this case did not reflect the evidence of Jones' medical and functional impairments. In fact, the vocational expert's testimony taken as a whole strengthens Jones' disability claim. Accordingly, the ALJ's conclusion that Jones could engage in substantial gainful activity is not supported by substantial evidence.

### III

### Application of the Grids

■ In determining whether a claimant can do substantial gainful work, the ALJ may apply the Secretary's medical-vocational guidelines (the grids) in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations. *See Heckler v. Campbell*, 461 U.S. 458, 462 n. 5, 103 S.Ct. 1952, 1955 n. 5, 76 L.Ed.2d 66 (1983). The ALJ must not apply the grids mechanically in borderline cases or where claimants possess limitations that are not factored into the guidelines. *See Id.* If the grids fail accurately to describe a claimant's particular limitations, the Secretary may not rely on the grids alone to show the availability of jobs for the claimant. *Stone v. Heckler*, 722 F.2d 464, 468 (9th Cir.1983); *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 528 (6th Cir.1981) *cert. denied sub nom. Kirk v. Heckler*, 461 U.S. 957,

103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983) (grids not determinative where characteristics of claimant do not identically match description in grid).

■ The ALJ's conclusion that the grids indicated a finding of "not disabled" is inconsistent with the Secretary's own regulations as well as with the law of this circuit. The very fact that the ALJ chose to call a vocational expert indicates his implicit assumption that Jones' claim could not be decided by the grids alone. The regulations themselves indicate that the presence of significant non-exertional limitations such as vision impairment and the inability to carry out and remember instructions will render the application of the grids inappropriate. In addition to these problems, Jones has significant difficulty with manual manipulation and dexterity. *See* C.F.R. § 404.1545(c) and (d). The application of the grids in the presence of Jones' non-exertional limitations was therefore error. *See Allen v. Secretary of Health and Human Services*, 726 F.2d 1470 (9th Cir. 1984); 20 C.F.R. § 404, Subpart P, Appendix 2, § 200.00(e).

The ALJ found that Jones could not engage in her former work because of her difficulties with her hands, and could not work around moving machinery or under conditions where she could endanger herself or others because of her epileptic condition. Although the ALJ concluded that Jones could do light and sedentary work and applied grid 202.18, the Secretary's regulations indicate that such a finding is not appropriate where a claimant's limitations significantly compromise the only range of work for which she is otherwise qualified. 20 C.F.R. § 404, Subpart P, Appendix 2, § 201.00(h). The grids are insufficient to support a finding of no disability in Jones' case because they do not accurately and completely describe Jones' abilities and limitations.

For the reasons stated above, we reverse and remand for the payment of SSI benefits.