**Robert H. DESROSIERS,**
**Plaintiff–Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
**Defendant–Appellee.**

No. 87–5765.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1987.

Decided May 16, 1988.

Lawrence D. Rohlfing, Williams & Rohlfing, Santa Fe Springs, Cal., for plaintiff-appellant.

Judith A. Waltz, Asst. Regional Counsel, San Francisco, Cal., for defendant-appellee.

Before SNEED, PREGERSON and KOZINSKI, Circuit Judges.

SNEED, Circuit Judge:

This is an appeal from the district court's judgment that upheld the decision of the Secretary of Health and Human Services (Secretary) to deny Desrosiers Social Security disability insurance benefits. On appeal, Desrosiers contends that (1) the Secretary's finding that he can perform the full range of light work is erroneous because that finding is not supported by substantial evidence, and (2) the Secretary's use of the Medical–Vocational Guidelines to find that Desrosiers is not disabled is incorrect because he has pain and postural limitations not covered by the Guidelines.

We reverse and remand for further proceedings. We do so on the basis that the Secretary's finding is not supported by substantial evidence. The basis of our holding that the Secretary's finding was not supported by substantial evidence necessitates a remand for further proceedings. Because of the remand we shall address the second of Desrosiers' contentions.

I.

FACTS AND PROCEEDINGS BELOW

Desrosiers, a fifty-three-year-old former steel worker, complains of back problems that limit his ability to engage in most sustained physical activities without experiencing increasing and ultimately severe pain. Desrosiers' back problems began in the mid–1970's, when he felt occasional sharp deep pains while working. In 1980, he suffered more severe and persistent back pain. His condition worsened again in 1982–1983.

In early 1984, Dr. Woodard, a workers' compensation doctor, evaluated Desrosiers for purposes of preparing a California state workers' compensation report. The doctor noted that Desrosiers' back pain was "con-stant every day" unless he took pain medication and that Desrosiers generally took medication every morning. Dr. Woodard's objective medical findings included "palpable spasms, decreased grip strength in the left arm, x-ray findings of chronic tendonitis as well as spasm and disc space narrowing." Dr. Woodard predicted that "[Desrosiers'] *subjective complaints of pain will be constant and slight, increasing to constant and moderate and occasionally severe with any physical activity.*" (Emphasis added).

Another workers' compensation physician, Dr. Gaskell, evaluated Desrosiers in connection with his California workers' compensation claim during the same period. He documented Desrosiers' complaints of "[d]aily moderate to severe pain in upper back aggravated with lifting, excessive turning of head or use of arms, sitting for prolonged time in certain positions, sleeping on stomach." Dr. Gaskell described Desrosiers as having degenerated discs with associated arthrosis, neuroradiculitis, and osteoarthritic changes, dorsal spine, and stated that this condition precluded "elevation of the left upper extremity above 90 degrees" and "repeated bending and stooping." Dr. Gaskell described Desrosiers' pain residuals as "*[c]onstantly slight/intermittently slight to moderate, becoming constantly moderate with lifting, bending, stooping, pulling, pushing, climbing, becoming greater than moderate and rising to severe with prolongation of such activities.*" (Emphasis added).

Desrosiers first applied for social security disability insurance benefits in early 1985. The Social Security Administration denied both his initial application and his request for rehearing. Desrosiers then asked for a hearing before an Administrative Law Judge (ALJ).

Desrosiers' testimony before the ALJ was consistent with Dr. Woodard's and Dr. Gaskell's earlier predictions of increasing and ultimately severe pain with prolonged activity of any kind. He also revealed that his experience with medication has been

largely unsuccessful: he has had to change medicines several times, and he now tries to take pain pills only when he "can't stand it." Desrosiers further testified that spends his time resting and engaging in limited housework. At this level of activity, his pain rises to an unbearable level approximately once per week.

The ALJ noted for the record that Desrosiers was fifty-one years old at the time of the hearing, that he had a GED high-school equivalency certificate, and that he had worked at unskilled positions in the steel industry for thirteen years. In addition to noting Desrosiers' pain limitations, the ALJ summarized the medical conclusions as follows:

> Pertinent substantial medical evidence of record shows the claimant has radiculopathy from the C7 nerve root on the left and myelogram and electromyogram showed definite nerve root impingement at C8. Claimant also has cervical spondylosis at C7 and C8 nerve roots and his diagnosis remains degenerative disc as C4–5 and C5–6 with associated arthrosis, herniated disc syndrome at C7 and chronic tendinitis of the cervical spine.

The ALJ decided that Desrosiers could not perform his past work, but that he retained the residual functional capacity to perform the *full range* of light work. "Light work" involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567 (1987).

According to the Medical–Vocational Guidelines, a fifty-one year old male with a high school equivalency certificate who has performed largely unskilled work is *not disabled* as long as he is limited to *light work* only. 20 C.F.R. pt. 404, subpt. P, app. 2, rule 202.13 (1987). The same male *would be disabled* were he limited to *sedentary work. Id.* rule 201.12. The ALJ applied the Guidelines for light work and observed that they directed a conclusion of "not disabled."

Desrosiers petitioned the Appeals Council for review of the ALJ's decision. To support his request for review, Desrosiers submitted an additional report by his treating physician, Dr. Sirichai. Dr. Sirichai had been presented with the technical definitions of "sedentary work," "light work," "medium work," and "heavy work," as those terms are used for Social Security disability evaluations. He was then asked to "review the definitions of work used by Social Security ... and check the degree of disability, if any [suffered by the claimant]." Dr. Sirichai indicated that Desrosiers could "perform sedentary work, but not light work."

The Appeals Council denied Desrosiers' request for review, and stated that it had "carefully considered," but nonetheless rejected, Dr. Sirichai's conclusion that Desrosiers was limited to sedentary work. In rejecting the treating physician's conclusion, the Council merely noted that "Dr. Sirichai has offered no new clinical findings to support his opinion and the objective findings already of record do not support his opinion."

Desrosiers sought review of the Secretary's determination in district court. The court referred the case to a United States Magistrate, who heard cross-motions for summary judgment. The Magistrate issued proposed findings and recommendations upholding the Secretary's denial of benefits. The district court adopted the Magistrate's findings and recommendations, and entered a judgment for the Secretary on February 19, 1987.

## II.

### STANDARD OF REVIEW

This court may set aside a denial of Social Security disability insurance benefits when the Secretary's findings are based on legal error or are not supported by sub-

stantial evidence in the record as a whole. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir.1986); *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir.1985). "Substantial evidence" means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1428, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 402, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *Taylor*, 765 F.2d at 875. We consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Secretary's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.1985).

### III.

### SUBSTANTIAL EVIDENCE

■ The finding of the Administrative Law Judge (ALJ) that Desrosiers' allegations of "inability to perform substantial gainful activity" were "contradicted by the reports of all examining physicians" was incorrect. Administrative Record (A.R.) at 14. The only physician who made a medical conclusion premised on the Social Security guidelines was Doctor Sirichai, the treating physician, who found Desrosiers limited to sedentary work, a condition that would entitle him to disability status. Doctors Woodard and Gaskell made no such examination.

Doctors Woodard and Gaskell evaluated Desrosiers for his California workers' compensation claim. In that context they found Desrosiers incapable of "heavy" work. That was as far as they had to go. It was not necessary to determine what level of work Desrosiers was capable of performing. Under the California workers' compensation system, a claimant incapable of performing "heavy" work may be capable of performing "light," semi-sedentary,"

or "sedentary" work. None of these three categories, however, is based on strength. Rather, they turn on whether a claimant sits, stands, or walks for most of the day. Each entails a "minimum of demands for physical effort." Schedule for Rating Permanent Disabilities, Guidelines for Work Capacity, 1–A (Labor Code of the State of California).

The categories of work under the Social Security disability scheme are measured quite differently. They are differentiated primarily by step increases in lifting capacities. It is clear from the record that the ALJ did not adequately consider this distinction. *See, e.g.*, A.R. at 44 (statement by the ALJ to Desrosiers: "[Dr. Gaskell] says you can't do any heavy lifting. Heavy lifting is considered to be above fifty pounds.")

Thus, contrary to the ALJ's findings, the reports of Doctors Woodard and Gaskell did not contradict Desrosiers' claim of disability. Doctor Sirichai's report, of course, supported Desrosiers' claim. We have said on several occasions that the recommendations of treating physicians carry special weight. *See, e.g., Summers v. Bowen*, 813 F.2d 241, 242–43 (9th Cir.1987); *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.1986); *Jones v. Heckler*, 760 F.2d 993, 997 (9th Cir.1985); *Murray v. Heckler*, 722 F.2d 499, 501–02 (9th Cir.1983).

### IV.

### PAIN AND THE GUIDELINES

In 1978, the Secretary of Health and Human Resources promulgated the medical-vocational guidelines in order to improve the efficiency and uniformity of Social Security disability benefits determinations. The validity of the regulations was upheld in *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). The Court observed that in an agency described as "the largest adjudicative agency in the western world," the need for efficiency "is self-evident." *Id.* 461 U.S. at 461 n. 2, 103 S.Ct. at 1954 n. 2 (citation omitted). The Court also noted that the regulations make allowances for claimants whose

limitations are not factored into the guidelines, by requiring that those individuals' particular limitations be considered. *Id.* at 462 n. 5, 103 S.Ct. at 1955 n. 5; 200 C.F.R. pt. 404, subpt. P, app. 2, §§ 200.00(a), (d) (1982).

This court has recognized that significant non-exertional impairments, such as poor vision or inability to tolerate dust or gases, may make reliance on the grids inappropriate. *Jones v. Heckler,* 760 F.2d 993, 998 (9th Cir.1985); *Kail v. Heckler,* 722 F.2d 1496, 1498 (9th Cir.1984). We have also held that pain can be a non-exertional limitation. *See, e.g., Perminter v. Heckler,* 765 F.2d 870, 872 (9th Cir.1985).

However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations. *Razey v. Heckler,* 785 F.2d 1426, 1430 (9th Cir.1986); *Black-nall v. Heckler,* 721 F.2d 1179, 1181 (9th Cir.1983); *Odle v. Heckler,* 707 F.2d 439, 440 (9th Cir.1983).

The ALJ must weigh conflicting evidence concerning the claimant's past work experience, education, and present psychological and physical impairments. The ALJ then applies the grids to these factors, ensuring that the final determination will be both consistent with other similar cases and expeditious. The claimant may challenge the sufficiency of the evidence supporting the ALJ's assessment. A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable.

All this can be accommodated to a system of fair and expeditious disposition of claims by those asserting pain or other non-exertional limitations. It is not necessary to permit a claimant to circumvent the guidelines simply by alleging the existence of a non-exertional impairment, such as pain, validated by a doctor's opinion that such impairment exists. To do so frustrates the purpose of the guidelines. The decisions of other circuits that have considered the issue support this interpretation. *See, e.g., Fraga v. Bowen,* 810 F.2d 1296, 1304 (5th Cir.1987) (ALJ may rely exclusively on the Guidelines if the non-exertional impairments do not significantly affect claimant's residual functional capacity); *Bapp v. Bowen,* 802 F.2d 601, 605–06 (2d Cir.1986) (ALJ must consider whether the range of work claimant could perform was so significantly diminished as to require the testimony of a vocational expert); *Tucker v. Heckler,* 776 F.2d 793, 795–96 (8th Cir.1985) (unnecessary to call vocational expert where ALJ thoroughly considered claimant's non-exertional impairments and explicitly determined that they did not diminish claimant's exertional capacities); *Smith v. Schweiker,* 719 F.2d 723, 725 (4th Cir.1984) (proper inquiry is whether a given non-exertional condition affects an individual's functional capacity to perform work of which he is exertionally capable); *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 537 (6th Cir.1981) (grid will be applied unless alleged non-exertional limitations are severe enough to restrict a full range of gainful employment at the designated level).

Any use of the guidelines by the ALJ on remand should adhere to these principles.

**REVERSED and REMANDED.**

PREGERSON, Circuit Judge, concurring:

I concur, but would add the following to the discussion of the Medical–Vocational Guidelines.

Initially, a claimant bears the burden of proving that he or she is disabled. *Howard v. Heckler,* 782 F.2d 1484, 1486 (9th Cir.1986). A claimant makes a prima facie showing of disability by proving that he or she cannot perform his or her past work. *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir.1984). Once this is shown, the burden of proof shifts to the Secretary to show that the claimant can perform "other work" considering his or her residual functional capacity, age, education, and work experience. *Id.* at 1456. The "other work"

must be available in the national economy in "significant numbers," 20 C.F.R. § 404.1560(b)(3) (1987), but the opportunities may lie either in the region where the claimant lives or in several other regions in the country, § 404.1566(a). The full five-step process of determining disability is described at 20 C.F.R. § 404.1520.

Desrosiers made a prima facie showing of disability by proving that he was not capable of performing his past work. As a result, the burden shifted to the Secretary to show that Desrosiers was not disabled because he could perform other work in the national economy. There are two ways that the Secretary can make such a showing: (1) The Secretary can take the testimony of a vocational expert, and (2) the Secretary can use the Medical–Vocational Guidelines.

Before 1978, the Secretary *always* used vocational experts to establish the availability of suitable jobs in the national economy. *Heckler v. Campbell,* 461 U.S. 458, 461, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). Vocational experts were, and still are, used in the following manner. The vocational expert is called to testify at a disability hearing. At the hearing, the ALJ uses a series of hypothetical questions to "set out all of the claimant's impairments" for the vocational expert's consideration. *Gamer v. Secretary of Health & Human Services,* 815 F.2d 1275, 1279 (9th Cir.1987) (citation omitted). The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record. *Id.* at 1279–80; *Gallant,* 753 F.2d at 1456. The ALJ is responsible for resolving questions of credibility when there is conflicting medical evidence. *Gamer,* 815 F.2d at 1280. The vocational expert is then called upon to "translate[ ] factual scenarios in to realistic job market probabilities" by testifying, on the record, to what kinds of jobs the claimant still can perform and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of "not disabled." *Id.* (citing *Sample v. Schweiker,* 694 F.2d 639, 643 (9th Cir.1982)).

In 1978, the Secretary adopted a matrix system (the Medical–Vocational Guidelines) for disposing of cases that involve substantially uniform levels of impairment. 20 C.F.R. pt. 404, subpt. P, app. 2 (1987). The Medical Vocational Guidelines in table form (these tables are commonly referred to as "the grids") present various combinations of the factors the Secretary must consider in determining the availability of other work. These factors include residual functional capacity, age, education, and work experience. For each combination, the tables direct a finding of either "disabled" or "not disabled." *See id.* This generalized approach encourages the Secretary to treat like cases alike and to streamline the administrative process. *Campbell,* 461 U.S. at 461–62, 103 S.Ct. at 1954–55.

Because the tables are merely an administrative tool to resolve individual claims that fall into standardized patterns, there are strict limits on when the Secretary may rely on the Guidelines. "[T]he ALJ may apply the Secretary's medical-vocational guidelines (the grids) in lieu of taking the testimony of a vocational expert *only when the grids accurately and completely describe the claimant's abilities and limitations.*" *Jones v. Heckler,* 760 F.2d 993, 998 (9th Cir.1985) (emphasis added); *see also Kail v. Heckler,* 722 F.2d 1496, 1497–98 (9th Cir.1984). The grids may be used as a *reference point* for decisionmaking when they do not accurately and completely describe a claimant's residual functional capacity, age, education, or work experience. However, under those circumstances "the Secretary may not rely on the grids alone to show the availability of jobs for the claimant." *Jones,* 760 F.2d at 998. The Secretary must *also* hear the testimony of a vocational expert. *Perminter v. Heckler,* 765 F.2d 870, 872 (9th Cir.1985). When the Secretary is required to call a vocational expert, the Guidelines "provide an overall structure" and a "frame of reference" within which the vocational expert must evaluate and the ALJ must decide individual cases. 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(d) (1987). If either a vocational expert's testimony or an ALJ's decision appears to be inconsistent with the

overall structure provided by the Guidelines, a claimant may challenge the testimony or the decision on that basis.

A claimant's disability level may fail to fit within the Guidelines in one of two ways. The Guidelines contain three tables: One for claimants who can perform "sedentary work," 20 C.F.R. pt. 404, subpt. P, app. 2, table 1 (1987); one for claimants who can perform "light work," *id.* table 2; and one for claimants who can perform "medium work," *id.* table 3. There is no table for claimants who can perform "heavy work" because "an impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse." 20 C.F.R. pt. 404, subpt. P, app. 2, § 204.00 (in short, anyone who can perform heavy work, as that category is defined by the social security system, is probably employable). Each table's designated level of work capacity has a technical definition that is phrased in terms of strength limitations. *See* 20 C.F.R. § 404.1567.[1] If a claimant's strength limitations differ from the technical definitions of sedentary, light, or medium work—for example the claimant falls somewhere between sedentary and light work—then the claimant is said to have *exertional* limitations that are not described by the grids. 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(d), (e) (1987). If a claimant has an impairment that limits his or her ability to work without *directly* affecting his or her strength, that claimant is said to have a *non-exertional* (not strength-related) limitation that is not covered by the grids. *Id.*

Examples of non-exertional limitations are mental, sensory, postural, manipulative, or environmental (e.g. inability to tolerate dust or fumes) limitations. § 200.00(e). We have often noted that pain may be a non-exertional limitation. *See, e.g., Howard,* 782 F.2d at 1486 n. 1.

The Medical–Vocational Guidelines do not accurately and completely describe Desrosiers' residual functional capacity to work because he suffers both pain and postural limitations not covered by the grids.

Pain may serve as either an exertional or a non-exertional limitation. Pain is an exertional limitation when it directly affects a claimant's strength (for example, when the neurological sensation of pain literally prevents a claimant's muscles from lifting an object). Pain is a non-exertional limitation when it does not affect a claimant's strength, but nonetheless affects a claimant's ability to work (for example, when a claimant's muscles enable him or her to lift an object, but the claimant is so distracted by the pain that he or she realistically cannot perform the work).

It is not necessary to decide whether Desrosiers' pain limitations are exertional or non-exertional; in either case, they serve as limitations not covered by the Guidelines. The California workers' compensation reports of Drs. Woodard and Gaskell indicate that Desrosiers will experience moderate to severe pain with prolonged lifting, bending, stooping, pulling, pushing, climbing, or virtually any sustained physical activity. The definition of light work used by the social security disability system includes this kind of repeated movement. If Desrosiers' pain acts as a

---

1. *Sedentary work* "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a) (1987).

*Light work* "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." *Id.* § 404.1567(b).

*Medium work* "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.* § 404.1567(c).

strength limitation, then he does not have the strength capacity to perform the full range of light work. If his pain functions as a non-exertional limitation, then it was improper to use the Guidelines because Desrosiers' non-exertional pain limitation significantly affects his ability to work and renders him unable to perform the full range of light work. Under either approach, the Guidelines do not accurately or completely describe Desrosiers' disability.

Desrosiers also has non-exertional postural limitations not covered by the Guidelines. He cannot lift his left arm above ninety degrees. Nor can he repeatedly stoop or bend. Given the fact that light work under the social security disability system contemplates repeated lifting of ten pounds in any position, it is clear that Desrosiers' postural limitations also prevent him from performing the full range of light work.

On the basis of the medical record before the Secretary, Desrosiers can perform work that does not require prolonged lifting, bending, stooping, pulling, pushing, or climbing, and does not require the use of his left upper extremity above shoulder level. This residual functional capacity is not captured by the description of light work used in the Medical–Vocational Guidelines. At best, Desrosiers' limitations place him somewhere between light and sedentary work. Therefore, the Guidelines should not have been applied, and the Secretary erred by using the Guidelines to declare that Desrosiers is not disabled and by failing to call a vocational expert.

The Secretary argues that Desrosiers can perform "light work" because he can perform *some* of the jobs that qualify as light work. This approach is not permissible.

The Secretary may base a finding of "not disabled" on the fact that a claimant can perform *some*, although not all, light work only if such a finding is supported by both the medical evidence *and* the testimony of a *vocational expert. See Perminter,* 765 F.2d at 872; *Kail,* 722 F.2d at 1497–98. To make such a finding, however, the Secretary is required to call a vocational expert

and hear testimony as to whether the claimant can perform *enough* light jobs in the national economy to warrant a finding of "not disabled." *See Kail,* 722 F.2d at 1498 (emphasis added); 20 C.F.R. § 404.1560(b)(3) (1987) ("If we find that you can no longer do the work you have done in the past, we will determine whether you can do other work (jobs) which exists in *significant numbers* in the nation's economy."). The reason for this requirement is that the Secretary may use the Medical–Vocational Guidelines to find that a claimant is not disabled *only* when the general categories of disability employed by the Guidelines—such as "sedentary work" or "light work"—accurately and completely describe the claimant's physical limitations. 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(d) (1987) ("If an individual's specific profile is not listed within [the Medical–Vocational Guidelines], a conclusion of disabled or not disabled is not directed."); *Jones,* 760 F.2d at 998 ("The ALJ must not apply the [Medical–Vocational Guidelines] mechanically in borderline cases or where claimant's possess limitations that are not factored into the guidelines."). If a claimant's limitations do not exactly coincide with the categories used by the Guidelines, the Secretary *must* take the testimony of a vocational expert to prove the existence of jobs in the national economy that the claimant can perform. *Jones,* 760 F.2d at 998 ("If the [Guidelines] fail accurately to describe a claimant's particular limitations, the Secretary may not rely on the [Guidelines] alone to show the availability of jobs for the claimant."). The Secretary may not avoid the process of consulting a vocational expert by using the Guidelines as though the claimant had the residual functional capacity for the *full range* of "light work" if in fact the claimant can perform only *some* types of light work.

Light work includes jobs that require the repeated lifting and carrying of up to ten pounds or the repeated pushing and pulling of arm or leg controls. The medical evidence and Desrosiers' testimony demonstrate that he will experience moderate to severe pain with prolonged activity of this kind. Therefore, Desrosiers cannot per-

form the *full range* of light work, and the use of the Guidelines to declare that Desrosiers was not disabled was improper.