Antonio J. CARRILLO, Plaintiff,

v.

Otis R. BOWEN, Defendant.

No. CIV 84–823 PHX EHC.

United States District Court,
D. Arizona,
Phoenix Division.

March 3, 1986.

Mark Caldwell, Friedman & Caldwell, Phoenix, Ariz., for plaintiff.

John R. Mayfield, Asst. U.S. Atty., Phoenix, Ariz., for defendant.

ORDER

CARROLL, District Judge.

Plaintiff is a forty year-old male, a life-long manual laborer who had a heart attack April 24, 1982. Subsequently he underwent double by-pass cardiac surgery May 11, 1982. On March 14, 1983 Plaintiff filed an application with the Secretary of Health and Human Services for determination of a period of disability and disability benefits.

Almost three years later this Court must decide for a third time whether the Secretary has acted upon this claim in a manner consistent with substantial evidence and applicable legal principles.

A review of how this case has reached its present posture is in order. As noted, Plaintiff filed his claim with the Secretary March 14, 1983. The claim moved through the review process and was denied, first by notice and then after a hearing before an Administrative Law Judge. The latter denial was issued November 10, 1983. The Appeals Council subsequently approved the ALJ's decision April 11, 1984. Plaintiff within a month initiated this action. A response and cross motions for summary judgment were filed and oral argument on those motions were heard. The issue before this Court was whether the ALJ had presented "clear and convincing reasons for rejecting uncontroverted reports" submitted by the Plaintiff. *Montijo v. Secretary of Health & Human Services*, 729 F.2d 599, 601 (9th Cir.1984).

Prior to the ALJ hearing claimant was examined by Dr. Gary Decker, a psychologist, who found that:

> The predictive testing suggests a somatization disorder with anxiety and conflicts being internalized with an increase in sensations of pain and displeasure. Difficulties with workers would frequently be internalized, with Mr. Carrillo reporting severe chest pain and dizziness necessitating leaving a job site.... Considering his lack of psychological insight and poor motivation, his prognosis for change is considered to be very guarded. Therefore, Mr. Carillo is seen as non-competitively employable at this time or in the foreseeable future.

Transcript of Proceedings 216–17.

The ALJ found that Dr. Decker's assessment was "totally unsupported by objective signs and findings." Transcript at 48. Based upon a November 12, 1982 test showing "only mild impairment of functional capacity, no evidence of myocardial ischemia, no chest pain, and possible inferior wall aneurysm" and that, in the ALJ's opinion, "claimant's testimony did not indicate either symptoms or signs of any functional, mental impairment," the ALJ found against the claimant. *Id.*

The ALJ's decision did not withstand the test of *Montijo*. He failed to set forth "clear and convincing reasons" for rejecting the Plaintiff's testimony or the evidence presented on Plaintiff's behalf. The ALJ focused on the physical side of Plaintiff's claim and rejected, in a conclusionary fashion, the mental impairment aspects of the claim. This he could not do. *See Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985); *Jones v. Heckler*, 760 F.2d 993, 997 (9th Cir.1985). The record, taken as a whole, did not contain substantial evidence supporting what ultimately became the de-

cision of the Secretary. Therefore, this Court remanded the case to the Secretary citing *Montijo* and stating in pertinent part that the Secretary had "failed to meet her burden of proof in presenting clear and convincing reasons for rejecting uncontroverted reports." This December 12, 1984 order concluded by remanding the case to the Secretary for "further proceedings consistent herewith."

Following the remand the Appeals Council, on February 27, 1985 forwarded the matter for an administrative hearing. After having Plaintiff examined by two psychiatrists, the ALJ found that Plaintiff had some medical and mental impairments. The ALJ's decision adopted and incorporated Proposed Findings of Fact and Conclusions of Law prepared by Plaintiff. Transcript at 387. Plaintiff's mental impairments were found to "effectively preclude him from returning to any relevant past work or performing any other work related activities on a regular and continuing basis." *Id.* at 396.

While the claim was pending before the ALJ the Secretary adopted new regulations regarding mental impairments. On November 29, 1985 the Appeals Council, having received the ALJ's favorable findings, remanded the claim back to the ALJ for a redetermination with respect to the revised mental impairment regulations. On December 23, 1985 this Court entered an order finding that the revised mental impairment regulations were inapplicable to Plaintiff's claim. The Court further directed that the Appeals Council within 20 days either affirm or reverse the favorable finding of the ALJ. If the Council reversed the ALJ's finding it was ordered to make specific findings of fact as to what evidence in the record controverted the ALJ's conclusion. The Appeals Council issued its decision on January 15, 1986 denying Plaintiff disability insurance benefits.

The Council states that "[i]n arriving at its final decision [it] is of the opinion that greater probative value must be given to the reports of Dr. Sharma, a psychiatrist (Exhibit 39), and Dr. George, a psychologist (Exhibit 38), rather than that of Dr. Decker, a psychologist (Exhibit 22)." Transcript at 230. The Council discounts the Decker report as being submitted by Plaintiff and having been prepared as part of the disability claims process. It also characterizes the Sharma report has being the result of Dr. Sharma's "thorough examination" of Plaintiff and reflective of the Plaintiff's "true mental status." *Id.*

▇▇▇ The Council's position that Dr. Decker's report is not entitled to the same credibility as its experts does not withstand close scrutiny. Neither Dr. Sharma nor Dr. George are "treating medical sources", a criticism of Dr. Decker. *Id.* Like Dr. Decker their examinations were "performed for the purpose of determining eligibility for social security benefits." *Id.* Attacks on a claimant's physicians as to their credibility must be supported by evidence as to a lack of general qualifications. *Montijo*, 729 F.2d at 602. Neither can "[t]he Secretary ... insulate ultimate conclusions regarding disability from review by turning them into questions of 'credibility'." *Jones v. Heckler*, 760 F.2d at 997. Nor does a reading of the three reports support a conclusion as to which, if any, are the product of a more thorough examination. If any quantitative conclusion can be reached it is that the Decker and George reports, citing numerous testing activities, reflect a more extensive interaction with and assessment of the Plaintiff. The Sharma report is based on a single interview. At most then the three reports are of equal weight. They are also very similar in their findings.

Dr. Decker, a psychologist, found that: The predictive testing suggests a somatization disorder with anxiety and conflicts being internalized with an increase in sensations of pain and displeasure. Difficulties with workers would frequently be internalized, with Mr. Carrillo reporting severe chest pain and dizziness necessitating leaving a job site.... Considering his lack of psychological insight and poor motivation, his prognosis for change is considered to be very guarded. There-

fore, Mr. Carrillo is seen as non-competitively employable at this time or in the foreseeable future.

Transcript at 216–17.

■ Dr. George, a psychologist, reports, Transcript at 373–74, that "lack of concentration was observed on all tests and a state of tension and heavy breathing." She further notes that Plaintiff exhibits a "high elevation" of hypochondriasis. She notes:

Since it is already recognized by physicians that he has a heart condition, the [high elevation of hypochondriasis] only corroborates it. Along with the somatic complaints he is also worried about the physical status. Since he is not an educated and sophisticated man, his condition is likely to produce all kinds of doubts about his heart. He has anxieties and tension associated with the impending death. Thus his established heart condition has other physiological and psychological and social concomitants.... Basically his problem is physical and physiological accompanied by much anxiety, social withdrawal and difficulties in interpreting his physical condition. Because of lack of understanding of his illness, he is likely to produce cognitive dissonance.... The pattern suggests not only his somatic difficulty, which is real, but also anxiety and depression.

On the Medical Assessment of Ability to Do Work-Related Activities (Mental) accompanying her report, Transcript at 376–77, Dr. George indicates that Plaintiff would have only a "fair" ability to relate to coworkers and his supervisors and no ability to deal with the public, work stresses or even to work independently. She concludes her discussion of his work-related potential that Plaintiff's "tension and anxiety are corollaries of his heart condition. Psychologically the tension and anxiety may have to be contained, so that his heart can maintain stability." The Appeals Council cites this report as one of the bases for its finding that Plaintiff is not disabled and can return to work. However, the Council rejected portions of the report stating, that "[a]lthough the psychologist rated the claimant's ability to do certain work-related items as only fair, this assessment was based in part upon such nonmedical factors as a lack of education and his social situation as well as his physical status, which were beyond the scope of her expertise." Transcript at 230.

It is noteworthy that the Decker and George examinations, while almost two years apart, drew the same conclusion: that Plaintiff has anxieties regarding his physical condition which are somatically manifested and preclusive of his ability to function in a work environment.

Dr. Sharma, a psychiatrist, examined Plaintiff within three weeks after Dr. George and, relying in part on Dr. George's testing of Plaintiff, formed:

[An] impression ... that the [Plaintiff] does not seem to suffer from any major mental illness except some depressive symptomatology which may be secondary to his incapability to perform his routine work because of his physical conditions. There seems to be no other evidence of any active mental illness at the present time. My feeling is that this patient is reacting in a depressed fashion to the present circumstances.... The [Plaintiff] certainly could benefit from psychological feedback to overcome some of his frustrations and depressive symptoms coming from his inability to perform the activities he could. I would recommend that this patient use some individual psychotherapy to overcome some of these difficulties.

Transcript at 380. The Appeals Council relies on Dr. Sharma's opinions, finding them to be reflective of Plaintiff's "true mental status." The Council failed to note that Dr. Sharma also found Plaintiff to be depressed and reacting to a perceived physical condition, with a need for treatment.

How then did the Appeals Council determine from Dr. Sharma's report that Plaintiff is not sufficiently impaired to be classified as disabled? First, it states Dr. Sharma found no signs of major mental illness. Presumably this conclusion of the Council

is drawn from the doctor's statement that "the patient does not seem to suffer from any major mental illness except some depressive symptomatology which may be secondary to his incapability to perform his routine work because of his physical conditions." This statement does not support an opinion that Plaintiff suffers from *no* mental illness; rather it demonstrates that Plaintiff suffers from the mental illness of depression—an illness which the doctor finds merits "individual psychotherapy". Dr. Sharma also, like Dr. George, couples Plaintiff's physical status with his mental status. Presumably this assessment is within Dr. Sharma's expertise.

Finally, reportedly relying on Dr. Sharma's report, the Appeals Council emphasizes Plaintiff's "own testimony". The Council states Plaintiff "reported that he did not have any mental problems, but did have some feelings of depression and frustration related to his physical limitations." Transcript at 230. The short answer to this proposition is that the problems reported by the Plaintiff constitute a mentally disabling condition.

The Appeal Council's findings are not supported by substantial evidence. Any further action by the Secretary would only delay benefits to this claimant and be counterproductive. Therefore, a finding by the Court that Plaintiff is entitled to disability insurance benefits is appropriate.

Somatization, claimant's major mental impairment, is the conversion of anxiety into physical symptoms. It has been the basis of more than one favorable decision on behalf of claimants. *See, e.g., Teter v. Heckler*, 775 F.2d 1104 (10th Cir.1985); *Farris v. Heckler*, 773 F.2d 85 (6th Cir. 1985); *Fulton v. Heckler*, 760 F.2d 1052 (10th Cir.1985).

The history of this Plaintiff's pursuit of benefits is over-long. Given the paucity of evidence which the Secretary has identified to refute the claim, "this case has gone far enough". *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir.1981), *quoting Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980). Accordingly,

IT IS ORDERED that Plaintiff is entitled to the determination of period of disability whose onset was April 24, 1982, and that he is entitled to disability insurance benefits thereon.