Rolane P. CARR, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

No. C–85–245–JBH.

United States District Court, E.D. Washington.

March 5, 1991.

Lora Lee Stover, Spokane, Wash., for plaintiff.

Richard H. Wetmore, Asst. Regional Counsel, Seattle, Wash., Thomas O. Rice, Asst. U.S. Atty., E.D. Wash., Spokane, Wash., for DHHS, Region X.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JAMES B. HOVIS, United States Magistrate Judge.

### JURISDICTION

Rolane P. Carr, plaintiff, applied for Social Security disability insurance benefits ("DIB") on March 25, 1982. (Tr. 103–106). The application was denied initially and on reconsideration. (Tr. 123, 132). Represented by counsel, Ms. Carr appeared before Administrative Law Judge ("ALJ") Marvin Harmatz, who issued a decision on June 18, 1983 affirming the denial. (Tr. 164–171). Ms. Carr requested review by the Appeals Council, and on January 24, 1984, the Council vacated the denial pursuant to *Morrison v. Heckler*, 582 F.Supp. 321 (W.D.Wash. 1983). (Tr. 176).

A second administrative hearing was held before ALJ Leonard E. Baloun, who also found that Ms. Carr was not disabled. (Tr. 12–19). Ms. Carr again requested review by the Appeals Council. After the Appeals Council denied her request for review (Tr. 3–4), Ms. Carr filed this court appeal pursuant to 42 U.S.C. § 405(g). Both parties consented to the Magistrate Judge's jurisdiction. (Ct.Rec. 4, 20, 24). The Secretary moved for remand of plaintiff's case for consideration under new mental impairment listings, and on November 20, 1985 this court ordered remand for another administrative hearing. (Ct.Rec. 10, 11).

A third hearing was conducted, again with ALJ Baloun, who issued a recommended denial on July 18, 1986. (Tr. 224–236). The Appeals Council approved the ALJ decision (Tr. 220–221), and the matter came back to federal court. On December 2, 1987 this court issued a second remand order and opinion specifying the ALJ's errors, primarily in the evaluation of Ms. Carr's mental impairment. (Ct.Rec. 21).

After psychological and psychiatric evaluations Ms. Carr appeared for her fourth ALJ hearing on March 15, 1989, again before ALJ Baloun, and again represented by counsel. (Tr. 432–491). Also appearing and testifying were R. Thomas McKnight, Ph.D., psychological advisor; David P. Grubb, M.D., psychiatric advisor; and Verne E. Cressey, M.D., examining psychiatrist. The ALJ's recommended denial was rendered on July 3, 1989, and accepted by the Appeals Council on July 14, 1990. (Tr. 404–405, 412–421). The matter is again before this Magistrate Judge.

### STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the plaintiff's and defendant's briefs and will only be summarized here. Ms. Carr was born on November 5, 1944 which made her 37 years old at the time of her application and 44 years old at the time of the final hearing. (Tr. 103). She has a high school education and past relevant work experience as a bagger in a candy factory and a bridal consultant. (Tr. 113, 117–118). Ms. Carr's application alleges disability due to pain and limitation in her back and right knee (Tr. 109), however, the record contains numerous reports of other physical impairments in addition to psychological/psychiatric impairments. Ms. Carr claims disability since December 7, 1980 (Tr. 103), and her insured status expired on June 30, 1982. (Tr. 413).

### STANDARD OF REVIEW

■ "The Secretary's determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence, 42 U.S.C. § 405(g)...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Wein-*

*berger,* 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601–602 (9th Cir.1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir.1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). "[S]uch inferences and conclusions as the Secretary may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson,* 457 F.2d 758, 759 (9th Cir.1972); *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir.1965).

■ While it is the role of the trier of fact, and not this court, to resolve conflicts in evidence, *Richardson,* 402 U.S. at 400, 91 S.Ct. at 1426, the court considers the record as a whole, and not just the evidence supporting the decision of the Secretary. *Weetman v. Sullivan,* 877 F.2d 20 (9th Cir.1989); *Thompson v. Schweiker,* 665 F.2d 936, 939 (9th Cir.1982). The court "may not affirm simply by isolating a specific quantum of supporting evidence." *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir.1989), *quoting Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir.1985).

■ A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services,* 839 F.2d 432, 433 (9th Cir.1987).

### ISSUES

Ms. Carr contends that the Secretary erred as a matter of law. Specifically she argues that:

1. The ALJ improperly found that her mental impairment did not interfere with her ability to do sedentary work.

2. The ALJ improperly relied on the Medical–Vocational guidelines for a finding of not disabled.

3. The ALJ did not properly consider the combined effect of her impairments.

Absent legal error, the underlying issue before the court is whether substantial evidence supports the decision of the Secretary that plaintiff is not disabled.

### DISCUSSION

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if his or her impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Secretary has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. § 404.1520(b). If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c).

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Secretary to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, Sbpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation pro-

ceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. § 404.1520(f). *See: Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

The initial burden of proof rests upon plaintiff to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir.1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Secretary to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir.1984).

## THE COURT REMAND ORDER

On December 2, 1987 this court remanded Ms. Carr's case to the Secretary, because the ALJ had failed to properly evaluate her mental impairment. (Ct.Rec. 21). The court held that the ALJ had failed to make a reasonable effort to ensure evaluation by a qualified psychologist or psychiatrist even though Ms. Carr moved for such evaluations, and that the Appeals Council failed to consider relevant psychiatric/psychological reports submitted subsequent to the hearing. (Ct.Rec. 21, p. 7).

The court concluded that as a result of this improper development of the record,

the Secretary did not fully consider Ms. Carr's mental condition, either singularly or in combination with her physical impairments. (Ct.Rec. 21, pp. 7–8). The court stated its opinion "that the evidence of record clearly establishes a 'severe' mental impairment and it was error for the Secretary to find otherwise." (Ct.Rec. 21, p. 8). The court ordered the ALJ on remand to call the examining psychiatrist for an explanation of his opinion that Ms. Carr was disabled before expiration of her insured status. *Id.*

## ALJ'S FINDINGS

The final ALJ hearing was held on March 15, 1989, and extensive testimony was taken from two psychiatrists and a psychologist. (Tr. 432–491). In his July 3, 1989 decision, the ALJ first discussed the procedural history and concluded that the court remand order removed from consideration steps one through four of the sequential evaluation.[1] (Tr. 415). Specifically, the ALJ stated that Ms. Carr has not engaged in substantial gainful activity; that she has severe impairments; that her impairments do not meet or equal the listed impairments; and that she cannot return to her past relevant work. (Tr. 415).

The ALJ limited his decision to Ms. Carr's mental impairment and discussed the testimony of the three doctors. (Tr. 417–420). R. Thomas McKnight, Ph.D., a licensed psychologist reviewed the record and testified as a psychological expert. The ALJ summed up Dr. McKnight's testimony as saying that it "best identified a mild somatoform disorder with functional limitation as described above."[2] (Tr. 419). In discussing the testimony of David P. Grubb, M.D., psychiatric medical advisor, the ALJ stated "Dr. Grubb could identify no medically determinable mental impairment whatsoever." (Tr. 419).

---

1. Neither party objects to this finding.

2. The functional limitations addressed by Dr. McKnight relate to the factors in section 12.-07(B) of the mental impairment listings. (Tr. 418). These factors are (1) restriction of activities of daily living, (2) difficulties in maintaining social functioning, (3) deficiencies of concentration, persistence or pace resulting in fail-

ure to complete tasks in a timely manner, and (4) episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms. 20 C.F.R. Part 404, Sbpt. P, App. 1, § 12.07. A claimant meets listing 12.07, if he/she has the required severity of three out of the four factors.

The ALJ discussed the testimony of Verne E. Cressey, M.D., the examining psychiatrist, acknowledging that it was more favorable to Ms. Carr than that of the other testifying doctors. (Tr. 418–420). The ALJ stated that Dr. Cressey's testimony was not "dramatically inconsistent" with that of the other doctors, and his diagnoses of somatoform disorder and other psychological impairment were not by themselves sufficient for a finding of disability. (Tr. 419–420). The ALJ accepted Dr. Cressey's opinion that the somatoform disorder was not psychiatrically disabling, but he rejected Dr. Cressey's opinion that the combination of psychiatric and physical impairments render her disabled. (Tr. 420).

Although the ALJ stated that he was not considering step three of the sequential evaluation, his summation of Ms. Carr's mental impairment is limited to the criteria of listings. 20 C.F.R. Part 404 Sbpt. P, App. 1, § 12.07. (Tr. 420). The ALJ concluded:

> In view of the above analysis, the undersigned concludes that the claimant's 12.07 somatoform/somatization disorder and dysthymia, moderate—not intense, would be attended by the following functional limitations only: slight restrictions of activities of daily living; slight difficulties in maintaining social functioning; deficiencies of concentration, persistence or pace resulting in failure to complete tasks in s timely manner (in work settings [or] elsewhere) which appear often; and one or two episodes of deterioration or decompensation in a work or work-like setting which cause her to withdraw from situations or to experience exacerbations of signs and symptoms (which may include adaptive behaviors). Such mental residual functional capacity is superimposed upon her otherwise residual functional capacity for the full range of sedentary work. However this superimposition does not dramatically interfere with the performance of the full range of sedentary work activity.

(Tr. 420). The ALJ turned to the Medical-Vocational Guidelines and found Ms. Carr not disabled at any time prior to the expiration of her insured status. (Tr. 420).

## COMPLIANCE WITH THE COURT REMAND ORDER—CONSIDERATION OF MENTAL IMPAIRMENT

The 1987 remand order instructed the Secretary to develop the record with respect to Ms. Carr's mental impairment. (Ct.Rec. 21, p. 8). The ALJ elicited extensive testimony from two psychiatrists and one psychologist, and in this respect, complied with the court order. The ALJ's questions to the doctors, however, did not address residual functional capacity. Essentially all of the psychiatric/psychological testimony, beyond mere diagnosis, was directed at the requirements found in the listings, including the factors required by Subdivision B of listing 12.07. (Tr. 443–444, 449–452, 480–486). These factors do not address all of the limitations imposed by Ms. Carr's impairment.

After discussing the psychiatric/psychological testimony, the ALJ concluded that it was reasonable to presume that, since Ms. Carr's mental impairment was not in itself disabling, it did not "dramatically interfere" with her ability to perform sedentary work. (Tr. 420). Based on the evidence before the court in 1987, however, the court found that Ms. Carr's mental impairment was "severe." A "severe" impairment, by definition, significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.-1521(a). Therefore, the mental impairment necessarily imposed additional limitations on her residual functional capacity, and the ALJ was required to fully consider the limitations. The court finds that by failing to fully develop and consider functional limitations imposed by Ms. Carr's severe mental impairment, the Secretary did not comply with this court's 1987 remand order.

## DATE OF ONSET

 The onset date of disability is the first day an individual is disabled as defined by the Social Security Act and regulations. *Morgan v. Sullivan*, 908 F.2d 1426, 1428 (9th Cir.1990). The critical date is the date of onset of disability not the date of diagnosis though the two may coincide.

*Swanson v. Secretary of Health and Human Services,* 763 F.2d 1061, 1065 (9th Cir.1985). Ms. Carr claims that both her physical and mental conditions have existed since she last worked on December 7, 1980. (Tr. 103). Because she met the special earnings requirement for coverage only through June 30, 1982, her onset of disability must be found to have occurred prior to June 30, 1982 in order for her to be eligible for DIB. (Tr. 413).

Verne Cressey, M.D., reviewed Ms. Carr's medical records and examined her in July 1986. (Tr. 509–535). His 1986 report offers the earliest diagnosis of somatoform disorder and a discussion of the disabling effects. Testifying at the final ALJ hearing in March 1989, Dr. Cressey opined that the 1986 diagnosis of somatoform disorder would have been appropriate in 1980, 1981, and 1982. (Tr. 470). He stated "I think it's clear because the bulk of the symptomatology she had goes way, way, way back in her life and it's always been this way." (Tr. 470). The psychological expert also testified that there was "reasonable probability" that the somatoform disorder existed in 1980 through 1982. (Tr. 442).

Ms. Carr applied for DIB on March 25, 1982. (Tr. 103). While she did not allege mental impairment as a cause of her disability on her application, the existence of psychological impairment should have been apparent to the Secretary from the beginning. Her treating physician documented problems with depression and anxiety in his initial reports submitted to the Secretary. (Tr. 144). In 1985 the Secretary moved this court for remand so that he could evaluate Ms. Carr under the new mental impairment regulations. (Ct.Rec. 10). Following the 1985 remand, Ms. Carr's attorney moved the ALJ for psychological and psychiatric evaluations, but that motion was ignored. (Tr. 253). Contrary to the Social Security Act, 42 U.S.C. § 421(h), the Secretary made no effort to obtain psychiatric or psychological evaluation of Ms. Carr's impairment, until ordered to do so by this court in the 1987 remand order. (Ct.Rec. 21).

Now we are faced with the difficult task of determining disability based almost entirely on evidence obtained years after the alleged onset date. The Secretary tells us that because of this time lag little weight can be accorded to medical opinions supporting the alleged onset date. (Ct.Rec. 32, p. 17). While the task may be difficult, onset date may appropriately be inferred based upon reports obtained subsequent to that date. *See* Social Security Ruling 83–20. The court is less than sympathetic with the Secretary's hesitance to infer onset date, since he had the initial responsibility for obtaining these evaluations. The court finds that substantial evidence supports Ms. Carr's contention that the existence and severity of her impairments existed at the time of her alleged onset date in December 1980 to the same extent as they exist at the present.

GRIDS

Once a claimant proves that he is unable to return to his past relevant work, the burden shifts to the Secretary to show he is capable of other work. *Kail v. Heckler,* 722 F.2d 1496, 1498 (9th Cir.1984); *Rhinehart v. Finch,* 438 F.2d 920, 921 (9th Cir.1971). The Secretary may use the Medical–Vocational Guidelines ("grids"), 20 C.F.R. Part 404 Sbpt. P, App. 2, to meet this burden. *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). Reliance on a grids finding of "not disabled" is appropriate "only when the grids accurately and completely describe the claimant's abilities and limitations." *Jones v. Heckler,* 760 F.2d 993, 998 (9th Cir.1985). The grids are inapplicable when the claimant suffers from nonexertional impairments, such as pain or mental impairment, which significantly limit his functional capacity. *Polny v. Bowen,* 864 F.2d 661, 663–664 (9th Cir.1988); *Perminter v. Heckler,* 765 F.2d 870, 872 (9th Cir.1985). In those situations the ALJ must take the testimony of a vocational expert. *Burkhart v. Bowen,* 856 F.2d 1335, 1340 (9th Cir.1988).

Ms. Carr claims that the ALJ's use of the grids was improper because she suffers from nonexertional impairments, including dysthymia and somatization disorder, which further limit her residual func-

tional capacity. (Ct.Rec. 26, pp. 8–10). The Secretary responds that reliance on the grids was appropriate since the ALJ found that her mental impairment did not affect her ability to perform sedentary work. (Ct.Rec. 32, p. 18). The specific finding of the ALJ is that her limitations from her mental impairment do not "dramatically interfere with the performance of the full range of sedentary work activity." (Tr. 420).

The Court of Appeals for the Ninth Circuit has specified the standard for determining when the grids are appropriate.

When a claimant's non-exertional limitations are "sufficiently severe" so as to *significantly limit* the range of work permitted by the claimant's exertional limitations, the grids are inapplicable.

*Burkhart*, 856 F.2d at 1340 (emphasis added); *Polny v. Bowen*, 864 F.2d 661, 663–664 (9th Cir.1988). While the ALJ's "dramatic interference" test may have literary appeal, it is simply not the appropriate standard.

A severe mental impairment necessarily creates limitations in functional capacity beyond strength limitations. 20 C.F.R. § 404.1521; Part 404, Sbpt. P, App. 1, § 12.00(E). Both Dr. McKnight and Dr. Cressey agreed that she has limitations in daily activities, social functioning, and concentration, and probably is likely to decompensate in stressful work situations. (Tr. 444, 450, 527). These factors, alone, prevent a full range of sedentary work and preclude reliance on the grids. A finding that Ms. Carr was capable of performing other work could not be made without the assistance of a vocational expert.

The court finds that Ms. Carr suffers from nonexertional impairments which significantly limit her residual functional capacity. The ALJ erred as a matter of law in his reliance on the grids for a finding of not disabled.

COMBINATION OF IMPAIRMENTS

■ When a claimant has more than one impairment the ALJ must consider the combined effect of those impairments. 20 C.F.R. § 404.1523. The Court of Appeals for the Ninth Circuit has instructed us that this includes consideration of the combined effect of physical and psychological impairments. "Because a person's ability to engage in gainful employment is dependent on both physical and psychological capabilities, ... 'a claimant's illnesses must be considered in combination and must not be fragmentized in evaluating their effects.' " *Sprague v. Bowen*, 812 F.2d 1226, 1231 (9th Cir.1987), *quoting Beecher v. Heckler*, 756 F.2d 693, 694–695 (9th Cir.1985), *and quoting Dressel v. Califano*, 558 F.2d 504, 508 (8th Cir.1977).

The record clearly documents Ms. Carr's numerous physical impairments. An April 1986 echocardiogram documents "moderately severe mitral valve prolapse with increased density and thickening of the valve consistent with myxomatous degeneration." (Tr. 537). Jeffrey O'Connor, M.D., who has been Ms. Carr's treating physician since June 1985, lists medical problems including status post thoracic outlet syndrome, status post hyperactive thyroid, gastritis, migraine headaches, and elevated cholesterol levels. (Tr. 544). In January 1983, she was treated for a torn medial meniscus in her right knee. (Tr. 598–599). An x-ray of Ms. Carr's lumbar spine on December 1, 1980 showed "(1) post op fusion L5–S1 level with marked narrowing of L5–S1 disc space; (2) mild compromise L4–L5 space; (3) degenerative changes L4–L5 facet joints." (Tr. 604). An April 26, 1982 letter from John F. Driscoll, M.D., who was Ms. Carr's treating physician from 1968 to 1985, lists low back problems of congenital spondylolysis with symptoms continuing after a fusion in 1972, problems with her right knee, gynecologic problems, mild hypertension, and mild fibrocystic disease of her right breast. (Tr. 144–145). Dr. Driscoll opined in March 1983 that Ms. Carr's physical impairments imposed significant limitations on her residual functional capacity, (Tr. 648), and the ALJ concluded that these physical impairments prevented her from performing more than sedentary work. (Tr. 415).

Dr. Cressey, the examining psychiatrist, and Dr. McKnight, the psychological advis-

or, diagnosed somatization disorder.[3] (Tr. 442–443, 469, 509–521). Dr. Cressey explained that people suffering from this disorder unconsciously "convert their other problems into physical symptoms." (Tr. 471). He explained:

> [T]he essential features of this group of disorders are physical symptoms suggesting physical disorder, transience, somatoform, for which are no demonstrable organic findings or known physiological mechanism and for which there is positive evidence or a strong presumption that the symptoms are [linked] to psychological factors or conflicts.

(Tr. 484). When asked whether somatoform disorders may sometimes be associated with organic pathology, Dr. Cressey responded, "when there is related organic pathology the complaint or residual, social, or occupational impairment is grossly in excess of what would be expected from the physical findings." (Tr. 484).

Courts have recognized the disabling nature of somatoform disorders, especially when they combine with physical impairments. *Teter v. Heckler*, 775 F.2d 1104, 1106 (10th Cir.1985); *Carrillo v. Bowen*, 636 F.Supp. 97, 101 (D.Ariz.1986). The Court of Appeals for the Tenth Circuit has held that "[c]omplaints of pain may not be dismissed as incredible merely because they stem in part from a psychological abnormality, so long as the psychological abnormality is shown by 'medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques....'" *Teter*, 775 F.2d at 1106, *quoting* 42 U.S.C. § 423(d)(5)(A).

Dr. Cressey opined that Ms. Carr is disabled by the combination of her physical and psychiatric impairments. (Tr. 477, 519). He came to this conclusion after reviewing her medical records from 1968 to 1986 and after examining Ms. Carr. (Tr.

515). Subsequent to the examination, Dr. Cressey reviewed results of a Minnesota Multiphasic Personality Inventory ("MMPI"), and he reported that these confirmed his original diagnosis and opinion. (Tr. 509). At the hearing Dr. Cressey further explained his diagnosis and gave the opinion that she was similarly disabled in 1980. (Tr. 469).

Dr. Cressey has been the only medical doctor to comment on the combined effect of Ms. Carr's impairments. Dr. McKnight reviewed the medical record and testified as a psychological advisor. (Tr. 442–455). Although he agreed with Dr. Cressey's diagnosis of somatoform disorder, he expressed disagreement with Dr. Cressey on the issue of disability due to the combination of impairments. This court appreciates Dr. McKnight's assistance and respects his overall opinion of disability. Dr. McKnight is a psychologist, however, and he is not qualified to offer conclusive opinion on Ms. Carr's physical impairments. His opinion is not a medical opinion, and it cannot be seen as contradicting that of Dr. Cressey.

The ALJ mentioned Dr. Cressey's opinion that Ms. Carr was disabled by the combination of physical and mental impairments. (Tr. 420). He discounted the opinion, because Dr. Cressey was "out of his field of expertise, psychiatry." *Id.* As a duly licensed physician, however, Dr. Cressey is competent to render medical opinions on Ms. Carr's physical conditions as well as her mental condition. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987).

The ALJ further discredited Dr. Cressey's opinion on disability by stating that the "other medical experts such as orthopedists and gastroenterologists" support the conclusion that Ms. Carr is "exertionally capable of sedentary work." (Tr. 420).

---

**3.** Psychiatrist Dr. Grubb reviewed the medical evidence and testified at the hearing. The ALJ claimed "Dr. Grubb stated that, during the period of time at issue, the claimant was suffering no medically determinable mental impairment whatsoever." (Tr. 418). The court searched Dr. Grubb's testimony and found no such statement. While he did state that he believed the record to be insufficient, in itself, for a diagnosis of soma-toform disorder (Tr. 465), he also stated that the record did contain "some indication" of the disorder. (Tr. 456). Dr. Grubb suggested that a clinical evaluation was necessary for proper evaluation (Tr. 459, 460–461), and the court notes that this was done by Dr. Cressey. The court attaches little weight to Dr. Grubb's lack of positive diagnosis.

While the other medical doctors do support this conclusion, they do not consider and comment on the combined effect of physical and mental impairments. Dr. Cressey was the only medical doctor to do this. If a psychiatric report is the only medical report to consider the combined effect of psychological and physical impairments, it is drawn from different facts as compared with reports based solely on physical findings, and therefore the psychiatric opinion is uncontradicted in the record. *Beecher v. Heckler,* 756 F.2d 693, 695 (9th Cir.1985).

After discounting Dr. Cressey's opinion of disability based on the combined effect of impairments, the ALJ discussed Ms. Carr's mental functional limitations under the criteria of listing 12.07. (Tr. 420). He concluded that these did not "dramatically interfere" with performance of a full range of sedentary work. (Tr. 420). This is clearly not appropriate consideration of the combined effect of physical and psychiatric impairments. The court finds that the ALJ erred as a matter of law.

## CONCLUSION

"The decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court." *Stone v. Heckler,* 761 F.2d 530, 533 (9th Cir.1985).

Nine years have passed since Ms. Carr applied for disability benefits. The three-volume administrative record documents four administrative hearings, and the court record demonstrates three separate considerations by this tribunal. Had the Secretary properly evaluated Ms. Carr initially and found her eligible for benefits, the total amount of benefits paid to her in these last nine years would hardly exceed the costs of these appeals to the parties and to the federal court. The court sees no purpose for further consideration.

The record is thoroughly developed. Substantial evidence documents that Ms. Carr suffers from severe physical and psychiatric impairments, the combined effect of which render her disabled pursuant to the Social Security Act. Additional pro-

ceedings would not remedy defects, and rehearing would simply delay benefits. *See Varney v. Secretary of Health and Human Services,* (*Varney II*), 859 F.2d 1396 (9th Cir.1988); *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir.1981).

IT IS ORDERED:

1. Plaintiff's motion for summary judgment is GRANTED and defendant's motion for summary judgment is DENIED.

2. The decision of the Secretary is REVERSED and defendant is directed to certify payment of disability insurance benefits in accordance with the statute.